## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DAVID A. PERRY,** | : | |
| **Petitioner,** | : | |
| | : | **Case No. 3:16-cv-1942 (VLB)** |
| **v.** | : | |
| | : | |
| **COMMISSIONER OF** | : | **March 30, 2022** |
| **CORRECTION,** | : | |
| **Respondent.** | : | |
| | : | |

## ORDER AND MEMORANDUM OF DECISION DENYING [26] AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSTANT TO 28 U.S.C. § 2254

The Petitioner, David A. Perry ("Petitioner" or "Defendant"), incarcerated and *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state convictions for sexual assault in the first degree, sexual assault in the third degree and risk of injury to a child. [Dkt. 26 (Amended Pet.)]. For the following reasons, the petition is DENIED.

### I.    FACTUAL BACKGROUND

#### A.    Findings of Fact

The Connecticut Appellate Court determined that the jury reasonably could have found the following facts:

> The defendant lived with all three victims[1] at the time of the assaults. The defendant assaulted the first victim, A, on two separate occasions while she was in fourth grade. Both times, the defendant called the victim at her grandparents' residence and asked that she come home alone. The first time, he called the victim to his bedroom and told her to get on the bed. After instructing the victim to remove her clothing, the defendant began touching her. He then put his finger into her vagina and made her touch

---

[1]  In order to protect their identities, the minor victims will be referred to as "A," "B," and "C." At the time of the allegations, A was 14 years old, B was 12 years old, and C was 8 years old. *See State v. David P.*, 70 Conn. App. 462, 465 (2002) ("*Trial Appeal*").

his penis. The second time, the defendant once again called the victim at her grandparents' home. Once she arrived, the defendant called her to his bedroom, but this time there was a pornographic video displayed on the television. He told the victim to get undressed and get on the bed. The defendant again told the victim to touch his penis, and he placed his finger into her vagina.

The defendant began assaulting the second victim, B, while she was also in the fourth grade. In the beginning, the defendant touched the victim's breasts and kissed her on the lips while she was still dressed. After the victim started the fifth grade, the defendant began having sexual intercourse with her in his bedroom, sometimes placing Vaseline on his penis beforehand. The assaults continued while the victim attended the sixth grade. On one occasion, the defendant forced the victim to perform oral sex.

The defendant assaulted his third victim, C, while she attended the second and third grades. During the assaults, the defendant touched her when he placed his hand under the victim's shirt and down her pants. That also occurred in the defendant's bedroom.

*Trial Appeal*, 70 Conn. App. at 465-66.

### B.    Disclosure and Investigation

This section summarizes trial testimony relevant to the claims set forth in the habeas petition before the Court.

In or around December 1996, B's friends, Krista and Christopher, reported allegations of sexual assault against B to the Connecticut Department of Children and Families (DCF). *See David P. v. Warden*, No. CV084002445S, 2014 WL 2854005, at *15 (Conn. Super. Ct. May 19, 2014) ("*State Habeas II*").[2] During an interview with DCF, B denied that she was being assaulted. *See id.* She stated that Krista was

---

[2] The most comprehensive recitation of the instant facts is set forth in Petitioner's second state habeas appeal. The chronology of Petitioner's filings is established in Procedural Background, Section II, *infra* pages 4-8. Because the titles of all relevant decisions are nearly identical, the Court will refer to cases according to their procedural posture (e.g., *State Habeas II*).

The Court also notes that, although Krista and Christopher were minors at the time, they testified as witnesses and their first names were made public during proceedings. The Court will therefore refer to these witnesses by first name only.

trying to get her dad in trouble. *See id.* DCF closed the investigation and deemed the allegations unsubstantiated. *See id.*

On May 12, 1997, Krista told school psychologist Elisabeth Delancey that B was being sexually assaulted. *See id.* at *7. Delancey called B into her office and allowed Krista to remain present while she spoke with B. *See id.* During this meeting, Krista did a significant amount of the talking and B agreed with her descriptions of the sexual abuse she was suffering. *See id.*

On May 13, 1997, Delancey pulled B from class. B initially denied the abuse. *See id. at *8.* After Delancey told B that she had to tell the truth, B disclosed that her father was sexually abusing her. *See id.* Later that day, Delancey, Haddam Police Detective Natale, DCF agent Gambardella and the school principal interviewed B for ninety minutes. *See id.* at *9. After the interview, Haddam Police Detective Remillard took a taped statement from B in the presence of B's mother. *See id.*

On the same day, B's siblings, A and C, were each questioned separately by DCF agent Gambardella. *See id.* A and C denied that they had been sexually abused. *See id.* On May 21, 1997, B received a medical examination from Nurse Practitioner Janet Murphy and was interviewed by social worker Florence Freudenthal. *See id.* The results of B's medical exam were deemed "abnormal" and showed she was missing hymenal tissue. *See* [Dkt. 32-23 (Second Trial Testimony of NP Murphy, App. Q) at p. 144]. NP Murphy testified that this type of injury was "consistent with some sort of penetrating trauma." [*Id.* at p. 152]. When questioned

further about whether the injury could have been caused by a penis, NP Murphy responded affirmatively. *See* [*Id*. at p. 153].

During a session with counselor Diane Brinkman on June 24, 1997, C disclosed that Petitioner sexually assaulted her. *See State Habeas II*, 2014 WL 2854005, at *10. On July 1, 1997, Detective Natale interviewed C with Brinkman present in the room while Gambardella observed through a one-way mirror. *See id.* On July 2, 1997, NP Murphy examined C. *See id.* C had normal vaginal and anal findings. [Dkt. 32-23 at p. 162].

## II.   PROCEDURAL BACKGROUND

Petitioner was charged in three separate Informations with counts of sexual assault and risk of injury to a child involving the three separate victims.[3] *State Habeas II,* 2014 WL 2854005, at *1. All three cases were consolidated for trial. In September 1998, a jury trial was held in the three consolidated cases. *See id.* Petitioner was represented by Attorney William Palmieri. *See id.* The trial judge declared a mistrial after the jury was unable to reach a verdict on all counts except for one. *See id.* The jury found the Petitioner not guilty on one of the counts of sexual assault in the first degree. *See id.* The state's attorney subsequently retried Petitioner.[4] *See id.* On March 30, 2000, a jury convicted Petitioner of all counts in

---

[3] In *State v. David P*., No. CR97181428 ("*Case I*"), Petitioner was charged with five counts of sexual assault in the first degree in violation of Connecticut General Statutes § 53a–70(a)(2) and two counts of risk of injury to a minor in violation of Connecticut General Statutes § 53–21. In *State v. David P*., No. CR97181945 ("*Case II*"), Petitioner was charged with two counts of sexual assault in the first degree and two counts of risk of injury to a minor. In *State v. David P*., No. CR97182745 ("*Case III*"), Petitioner was charged with one count of sexual assault in the first degree, one count of sexual assault in the third degree, and one count of risk of injury to a minor.

[4] In *Case I*, Petitioner was charged with three counts of sexual assault in the first degree and two counts of risk of injury to a minor. In *Case II*, Petitioner was charged with two counts of sexual assault in the first degree and two counts of risk of injury to a minor. In *Case III*, Petitioner was

each Information. *See id*. at *2. On May 19, 2000, Perry was sentenced to 55 years of imprisonment in *Case I*, 30 years of imprisonment in *Case II*, and five years of imprisonment in *Case III*, for a total effective sentence of 90 years of imprisonment. *See id*.

On direct appeal, Petitioner argued that the trial court (1) erred in consolidating his cases for trial; (2) prevented him from raising a defense by excluding evidence that had been admitted in the first trial; (3) improperly restricted his right to cross examination under the Sixth Amendment; and (4) erred in permitting the state's attorney to engage in misconduct during his closing argument and rebuttal to the jury. *See Trial Appeal*, 70 Conn. App. at 466, 471, 473-74. The Connecticut Appellate Court affirmed the conviction and the Connecticut Supreme Court denied certification of appeal. *See id.*; *State v. David P.*, 262 Conn. 907 (2002) ("*Trial Cert. Denial*"). None of these issues are included in the federal petition.

On July 16, 2002, Petitioner filed a petition for writ of habeas corpus in state court. *Perry v. Comm'r of Correction*, No. CV020466794, 2005 WL 1433181 (Conn. Super. Ct. May 17, 2005) ("*State Habeas I*"). Counsel was appointed to represent Petitioner. Counsel for Petitioner filed a second amended petition raising claims of ineffective assistance of trial and appellate counsel. *See id.* at *1. Following a hearing, the habeas court dismissed the petition.

---

charged with one count of sexual assault in the third degree and one count of risk of injury to a minor.

On August 10, 2007, Petitioner filed his first habeas petition in federal court pursuant to 28 U.S.C. § 2254.[5] *Perry v. Comm'r of Correction*, No. 3:07-cv-1265 (JCH), 2008 WL 1821509, at *1 (D. Conn. Apr. 10, 2008) ("*Federal Habeas I*"). The Commissioner ("Respondent") filed a motion to dismiss or stay the petition because it contained unexhausted and exhausted grounds for relief. *See id.* at *2. The court granted the motion to dismiss without prejudice to refiling after Petitioner fully exhausted his remedies in state court. *See id.* at *3.

On June 10, 2008, Petitioner filed a second habeas petition in state court. *See State Habeas II*, 2014 WL 2854005, at *1. In the fourth amended petition in this action, Petitioner asserted ineffective assistance of counsel claims by the attorney who represented him in his first state habeas petition.[6] *See id.* From November 25 through 27, 2013, the state court held what it called a "trial" on the habeas petition

---

[5] Petitioner challenged his conviction on five grounds: (1) inability to present relevant testimony from the first trial at his retrial; (2) withholding exculpatory evidence; (3) prosecutorial misconduct during closing argument; (4) denial of counsel on appeal of his state habeas petition; and (5) ineffective assistance of trial counsel.

[6] In count one, Petitioner raised fourteen deficiencies that he claimed his original state habeas counsel should have raised regarding Attorney Palmieri's performance as trial counsel. Petitioner argued that Attorney Palmieri provided ineffective assistance of counsel because he 1) failed to obtain medical, psychological and educational records of the complainants; 2) mischaracterized, to the petitioner's detriment, the evidence regarding one of the complainants; 3) elicited testimony of additional, uncharged misconduct of another complainant; 4) elicited details of the alleged sexual encounters between the petitioner and complainants in violation of *State v. Troupe*, 237 Conn. 284. 677 A.2d 917 (1996); 5) failed to seek a ruling that the trial court evidentiary rulings during the petitioner's first criminal trial, which ended in a mistrial, constituted law of the case; 6) failed to investigate and develop an innocent alternate explanation for the complainants' disclosure of sexual abuse by the petitioner; 7) failed to present evidence that the investigation conducted and/or adopted by the prosecutor was incomplete or biased; 8) failed to present the testimony of a forensic psychologist as an expert witness to address the deficiencies in the state's investigation; 9) failed to present the testimony of a medical doctor with experience in assessment of child sexual abuse claims; 10) failed to present the testimony of certain witnesses who interviewed the complainants; 11) failed to effectively cross examine other witnesses who interviewed the complainants; 12) failed to move to exclude the opinions of the state's medical experts; 13) failed to move to strike the state's experts repeated references to "child sexual abuse victims"; and 14) made an inappropriate and inflammatory closing argument. Petitioner also raised two deficiencies that he claimed his original state habeas counsel should have raised regarding Attorney Palmieri's performance as appellate counsel.

where numerous witnesses testified. *See id.* at *4. Most relevant to the claims before this Court are the testimonies from Dr. Mantell, a licensed psychologist who specialized in child abuse and neglect, and Attorney Palmieri. After considering the testimony, the state court denied the petition. *See id.* at *21. The court determined that none of Attorney Palmieri's decisions and actions were objectively unreasonable. *See generally id.* at *12, *14, *16-18.

Petitioner appealed the denial of the second state habeas petition on three grounds. *See David P. v. Comm'r of Correction*, 167 Conn. App. 455, 457 (2016) ("*State Habeas II Appeal*") . He argued that (1) counsel in his first habeas case was ineffective because he "failed to offer witnesses who would have supported a defense theory that the investigation violated best practices, consistent with the interviewers' exerting social pressure and influence on the victims;" (2) trial counsel was ineffective because he "mischaracterized testimony of the underlying allegations and elicited additional allegations;" and (3) "the habeas court erred by overruling [his] objection raised during the habeas trial to testimony regarding statements made by one of the victims to [DCF agent] Alphonse Gambardella…because the statements were hearsay and not within any exception." *Id.* at 457. The Connecticut Appellate Court affirmed the habeas court's denial of the petition in a decision affirming the court's application of *Strickland* to Petitioner's claim. *See id.* The Connecticut Supreme Court denied certification for review. *David P. v. Comm'r of Correction*, 323 Conn. 921 (2016) ("*State Habeas II Cert. Denial*").

On November 28, 2016, Petitioner filed the instant habeas petition in federal court pursuant to 28 U.S.C. § 2254 alleging that trial counsel was ineffective in nine different ways.[7] *See* [Dkt. 1 (Pet.)]. On March 20, 2018, the Court dismissed the petition, finding that Petitioner had not "demonstrated good cause for failing to exhaust ineffective assistance of trial counsel sub-claims 1-3 and 6-8." [Dkt. 17 (Order on Mot. to Stay) at p. 32]. On August 10, 2018, Petitioner filed a motion to reopen seeking to proceed on the exhausted claims and abandoning all unexhausted claims. [Dkt. 24 (Mot. to Reopen)]. The Court granted Petitioner's motion and allowed him to file an amended petition. [Dkt. 25 (Order on Mot. to Reopen)].

Petitioner filed his amended petition on October 15, 2018, alleging the following ineffective assistance of counsel claims against Attorney Palmieri: (1) failure to "show social and peer pressure violations of Best Practices Policies 1997 by all interviewers as Dr. Mantell addressed [during his testimony] in the habeas trial;" (2) failure to "effectively cross-examine Dr. Mantell and other prosecution experts because he neglected to become knowledgeable about or understand the Best Practices Policies by reading the literature and research which Dr. Mantell

---

[7] Petitioner claimed that trial counsel failed to: (1) engage in a proper investigation; (2) secure all items of evidence that might be exculpatory; (3) consult with or call as witnesses any experts in order to rebut the testimony of state experts and to test medical evidence; (4) "show social and peer pressure violations of Best Practices Policies 1997 by all interviewers as Dr. Mantell addressed [during his testimony] in the habeas trial; (5) effectively cross-examine Dr. Mantell and other prosecution experts because he neglected to become knowledgeable about or understand the Best Practices Policies by reading the literature and research which Dr. Mantell relied on as a basis for his testimony; (6) "investigate claims of threats toward[s] alleged victim[s] and family"; (7) examine whether another individual might have abused the alleged victims; (8) "obtain all audio and video recordings, swabs [and] slides from medical examinations;" and that trial counsel (9) "mischaracterize[ed] testimony" of the alleged victims "and elicited additional allegations" from the alleged victims."

relied on as a basis for his testimony;" and (3) "trial counsel mischaracterize[ed] testimony of the alleged victims and elicited additional allegations from the alleged victims."[8] [Dkt. 26 at p. 9].

### III.   STANDARD OF REVIEW

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. *See* 28 U.S.C. § 2254(a). Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). A federal court cannot grant a state prisoner's petition for a writ of habeas corpus with regard to any claim that was rejected on the merits by the state court, unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). That standard is very difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013).

Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *See Howes v. Fields*, 566

---

[8] The Court previously found Petitioner had exhausted the claims raised in the amended petition. *See* [Dkt. 17].

U.S. 499,505 (2012) (internal quotation marks and citation omitted). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "therefore cannot form the basis for habeas relief." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)). The law in question may be either a "generalized standard" or a "bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to…clearly established Federal law" when the state court "applies a rule different from the governing law set forth" by the Supreme Court or when it "decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). A decision "involve[s] an unreasonable application of…clearly established Federal law" when the state court has correctly identified the governing law but applies that law "unreasonably to the facts of a particular prisoner's case or refuses to extend a legal principle that the Supreme Court has clearly established to a new situation in which it should govern." *Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008) (internal quotation marks and citation omitted). It is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks and citations omitted). Thus, a state prisoner must show that the challenged court ruling "was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Burt v. Titlow*, 571 U.S. 12, 20 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction").

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner bears the burden to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (standard for evaluating state court rulings where constitutional claims have been considered on the merits and which affords state court rulings the benefit of the doubt is "highly deferential" and "difficult [for petitioner] to meet"). In addition, the federal court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

## IV.    DISCUSSION

Petitioner challenges his conviction on one ground, ineffective assistance of trial counsel. *See* [Dkt. 26 at p. 9]. He alleges that Attorney Palmieri was ineffective in three different ways: (1) he failed to pursue a suggestive interview theory of defense; (2) he failed to consult or call an expert witness; and (3) he elicited additional allegations and misrepresented testimony during closing argument. [*See id.*]. Although Petitioner phrases his ground for relief differently, the Court considers this petition to assert those specific ineffective assistance of counsel claims as they were presented in state court.

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a petitioner must first demonstrate that counsel's conduct was "deficient" in that it "fell below an objective standard of reasonableness" established by "prevailing professional norms." *Id.* at 687-88. The Court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. *See id.* at 690 (in assessing deficient performance, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"). Counsel is presumed to be competent, and the petitioner bears the burden of demonstrating unconstitutional representation. *See United States v. Chronic*, 466 U.S. 648, 658 (1984). Second, a petitioner must demonstrate that counsel's deficient performance prejudiced him. *See id.* at 687. To satisfy the prejudice prong, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine the confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords "a heavy measure of deference" to counsel's decisions. *Rompilla v. Beard*, 545 U.S. 374, 381 (2005). To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice. *See Strickland*, 466 U.S. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong. When reviewing ineffective assistance of counsel claims in a section 2254 petition, a

federal court "must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Woods*, 135 U.S. at 1376 (internal quotation marks and citation omitted).

The Court considers the "last reasoned" state court decision in evaluating a section 2254 petition. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Here, the "last reasoned decision" was issued by the Connecticut Appellate Court in *Habeas II Appeal*. In that decision, the appellate court applied the *Strickland* standard. Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).

Accordingly, this Court must determine whether the state court decision is a reasonable application of *Strickland*. The question this Court must answer "is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "[R]eview under § 2254(d)(1) focuses on what a state court knew and did" and "measure[s]" the state court decision against Supreme Court "precedents as of 'the time the state court rendered its decision.'" *Cullen*, 563 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowledge v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule,

the more leeway courts have in reaching outcomes in case-by-case determinations.")).

> **A.    Claim One: Failure to Pursue Suggestive Interview Theory of Defense**

Petitioner claims that Palmieri was ineffective because he failed to offer a suggestive interview theory of defense by arguing that the interviewers violated best practices which led to false allegations of sexual abuse. *See* [Dkt. 26 at p. 9]. Instead, Palmieri offered the same theory of defense he used during the first trial. His theory was that B, A, and C were peer pressured into making false allegations of sexual assault. *See State Habeas II*, 2014 WL 2854005, at *1. Palmieri argued that B only came forward because of social pressure from friends, Krista and Christopher, who made the allegations on B's behalf out of spite for Petitioner, and A and C only came forward to bolster their sister's accusations. *See id.* Palmieri successfully offered this defense at the first trial which ended in an acquittal on one count and a mistrial on the others. *See id.*

At the habeas trial, Dr. Mantell testified about the "best practices" for interviewing victims of sexual abuse and opined that these practices were violated numerous times during the interviews of the victims in this case. *See id.* at *10-11. He based his opinion on sources available at the time, including a nationally published book analyzing children's testimony in these types of cases, and a widely published report covering sources of error during sexual assault interviews. [Dkt. 32-30, 31 (Dr. Mantell's State Habeas Testimony, App. S) at pp. 59-67].

Based on these materials, Dr. Mantell opined that the school psychologist violated best practices by (1) interviewing B herself instead of simply reporting the

allegation, (2) interviewing B in Krista's presence, (3) improperly prompting B to tell the truth or make a disclosure so that B's father could get help, (4) potentially influencing the investigation by discussing her findings with DCF and the police, and (5) being present during the DCF and Haddam police interviews. *See State Habeas II*, 2014 WL 2854005, at *10-11 (citing Dr. Mantell's testimony).  Dr. Mantell also opined that the number of times B was interviewed, the length of the interviews, and the presence of multiple individuals in the interview space violated best practices. *See id.*  Dr. Mantell testified that there were too many people present during A's and C's interview, A and C should not have been interviewed together, and in subsequent interviews after A's initial disclosure, she was merely asked to recount what she told the first interviewer instead of being asked more general questions. *See id.* Finally, Dr. Mantell stated that DCF and Haddam Police violated best practices by not questioning the source of the children's knowledge and failing to test alternative theories. *See id.*

Palmieri testified that "he read whatever he could put his hands on from articles on psychology of child witnesses" and was aware of studies about "artificially implanted memories" and "guided testimony." [Dkt. 32-30 at p. 153]. He did not recall specifically if he was aware of how many people should be present during interviews but emphasized that these factors were often dependent on circumstances such as the age and comfort of the child. [*See id.* at 155-56]. He stressed that he was concerned with the "internal integrity" of the investigation. [*Id.* at 187-88]. Palmieri did not recall consulting a forensic psychologist to discuss the potentially suggestive nature of the interview process. [*See id.* at 156-57]. He

stated that this was not the "main thrust" of his case as "the issue was never that the interview process was suggestive, but that the genesis of the complaint was false." [*Id.* at 210].

The habeas court acknowledged that Dr. Mantell's testimony was well-supported and, though the suggestive interview defense theory would have also been a reasonable defense, the court ultimately found Palmieri's decision to pursue the social pressure theory instead was not objectively unreasonable. *See State Habeas II*, 2014 WL 2854005, at *14. Notably, the court highlighted several weaknesses with the suggestive interview theory. *See id.* at *12-13. For example, it would not have explained the medical evidence of B's absence of hymenal tissue. *See id.* at *16. The theory also would not have explained Beth Lapierre's testimony that B had disclosed to her six months before the December 1996 DCF report.[9] *See id.* A suggestive interview theory likely would have resulted in additional, potentially damaging, testimony by *constancy of accusation* witnesses. *See id.* at *13. Finally, there was less evidence of suggestion during A's and C's interviews, leaving their accusations unexplained. *See id.*

In contrast, the social pressure defense negated all three of the victims' accusations and led to an acquittal on one count and a mistrial on the others in Petitioner's first trial. *See id.* at *14. The court found it was reasonable for Palmieri to believe that the evidence supporting the social pressure theory that was admitted at the first trial would also be admissible at the second trial. *See id.*

---

[9] At the second trial, the prosecution offered two new accusation constancy witnesses, Beth LaPierre and Anne DeGennaro. *Id.* Beth testified that B told her that her father had been sexually abusing B for six months before Krista and Christopher made their report to DCF. *Id.* Anne, Beth's mother, testified that her daughter had told her about the allegations around the same time. *Id.*

Additionally, Palmieri could rely on transcripts from the first trial for impeachment. *See id.* at *15. There is no evidence that Palmieri could have anticipated the hurdles to his theory of defense that presented at the second trial but were absent from the first. *See id.*

Based on these facts, the court found that it was not unreasonable for Palmieri to forego the suggestive interview theory in favor of the social pressure theory of defense. The Connecticut Appellate Court agreed, finding that Petitioner did not "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *See Trial Appeal,* 70 Conn. at 469 (quoting *Strickland*, 466 U.S. at 689). Under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. The appellate court "reconstruct[ed] the circumstances of counsel's conduct" and "evaluat[ed] the conduct from counsel's perspective at the time" before concluding that Palmieri's performance was not deficient. *Id.* (same). The Court concludes that this was a reasonable application of Supreme Court law.

      **B.**    <u>Claim Two: Failure to Call or Consult an Expert Witness</u>

Petitioner argues that Palmieri should have investigated "medical and psychological evidence" and called an expert witness to testify about best practices. [Dkt. 37 (Pet. Reply) at p. 5]. He alleges that Palmieri did not have the knowledge or expertise to cross examine witnesses or mount an effective defense

because he had not consulted an expert. *See* [*Id.* at pp. 8-10]. Petitioner cites to Palmieri's testimony at the habeas trial where he stated that he is "not sure that [he] would agree with the term 'best practices' in investigation or questioning children in claims of child sexual abuse." [*Id.* (citing Dkt. 32-31 at p. 154)]. Palmieri also testified that he did not know that "there is one book of rules that one would follow" on this topic. [*Id.* at 154]. Palmieri indicated that although he was not aware of specific practices, he was concerned with the "internal integrity" of the investigation. [*Id.* at 187-88].

Palmieri's testimony at the habeas trial demonstrated that he considered and reasonably investigated the suggestive interview theory but ultimately decided to pursue a different defense which made further investigation unnecessary. Palmieri testified that he "read everything he could get his hands on," knew about implanted memories and guided testimonies, and was familiar with the protocols for conducting forensic interviews. [*Id.* at 153-54, 185-87]. As the Court discussed in Section A, this theory of defense left evidence unexplained. *Supra.*

Petitioner cites to two cases where the Second Circuit granted habeas petitions after finding ineffective assistance of counsel for failing to call expert witnesses in sexual assault cases. [Dkt 37 at p. 2, 9 (citing *Gersten v. Senokowski*, 426 F.3d 588 (2d Cir. 2005); *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001))]. In *Lindstadt*, the Second Circuit found the defense attorney's failure to request materials and studies that formed the basis for the prosecution expert's testimony on physical evidence of sexual abuse amounted to ineffective assistance of counsel because the attorney was unable to effectively cross examine the expert.

*See* 239 F.3d at 195, 201-02.  This was one of four different errors the Second Circuit cited as the basis for granting the habeas petition. *See id.* at 202.

Like Petitioner, Gersten was convicted of sexually assaulting his daughter. *Gersten*, 426 F.3d at 591. During his trial, the prosecution called the doctor who examined the victim to testify about the physical evidence of abuse and a clinical psychologist who testified about child sexual abuse accommodation syndrome. *See id.* at 594-96. Gersten's defense attorney did not call any witnesses nor did he consult an expert or even investigate the prosecution's medical evidence. *See id.* at 607-08. At his state habeas hearing, Gersten submitted affidavits from a doctor and a psychologist. *See id.* at 599. The doctor, after reviewing the medical evidence presented at trial, concluded that the physical evidence did not appear indicative of penetrating trauma and could not corroborate the allegation of abuse. *See id.* at 600. The psychologist testified that child sexual abuse accommodation syndrome was no longer accepted in the scientific community and that many statements in the psychologist's trial testimony were erroneous. *See id.* The Second Circuit found that counsel's failure to investigate critical prosecution evidence constituted deficient performance. *See id.*

The appellate court distinguished Petitioner's case from cases where "employment of an expert for the defense may be constitutionally mandated by the facts and surrounding circumstances of the case[.]" *Trial Appeal,* 70 Conn. at 473 (citations omitted). In contrast to trial counsel in *Gersten*, the appellate court found that Palmieri had considered pursuing the suggestive interview defense but after

weighing the pros and cons determined that the peer pressure defense was a more viable approach. *See id.* at 472.

These cases do not stand for the proposition that it is *per se* ineffective of assistance of counsel to not consult an expert witness in sexual assault cases. In *Lindstadt* and *Gersten*, the Second Circuit found that it was ineffective not to consult an expert where there was no alternative theory of defense and where an expert opinion would have directly contradicted the prosecution's evidence. *See Gersten*, 426 F.3d 588; *Lindstadt*, 239 F.3d 191. That is not the case here. As the appellate court noted, "[u]nder the facts of this trial, however, an expert likely would have provided testimony substantially similar to that given by Mantell in the habeas trial, and even with such expert testimony, the theory of defense still would have been vulnerable to the same weaknesses described by the habeas court. Palmieri's performance was not deficient for having chosen the strategy he did." *Trial Appeal,* 70 Conn. at 473. The Court finds that the Connecticut Appellate Court's application of *Strickland* to Palmieri's decision to not consult an expert was reasonable and not contrary to clearly established Supreme Court law.

### C. Claim Three: Damaging Testimony and Mischaracterization of Witness Testimony

Petitioner argues that Palmieri's mischaracterization of the victims' testimony and his questioning that elicited additional allegations of abuse constituted deficient performance. The appellate court agreed with the habeas court's finding that Palmieri's questioning on cross examination which elicited further allegations of sexual abuse was not deficient. *Trial Appeal,* 70 Conn. at 474. Palmieri only engaged in this type of questioning in an effort to impeach the

witnesses by pointing out inconsistencies in their statements. *See id.* There is nothing in the record to suggest that Palmieri would have known that this line of questioning would elicit additional allegations. The appellate court found Palmieri's strategic decision to engage in this line of questioning "virtually unchallengeable" under *Strickland*. *See id.* (citing *Strickland*, 466 U.S. at 690).

Petitioner next argues that Palmieri's misstatement during closing argument amounted to deficient performance. Palmieri stated that B indicated that she engaged in intercourse once a week through fourth, fifth, and six grades when B's actual testimony was that the sexual abuse began in fourth grade and intercourse began in fifth grade. *See Trial Appeal,* 70 Conn. at 474 (citing trial testimony (citation omitted)). Palmieri chose to emphasize this number as part of his impeachment strategy. *See id.* The appellate court found that the "error was not a significant one" and did not result in deficient performance. *Id.* (citing *Strickland*, 466 U.S. at 688). The Court finds that the appellate court reasonably applied *Strickland* to both these issues.

V.    CONCLUSION

For the aforementioned reasons, all claims asserted in the Amended Petition for Writ of Habeas Corpus [Dkt. 26] are DENIED. The Clerk is directed to enter judgment against Petitioner and close this case.

IT IS SO ORDERED

_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 30, 2022